Marcus G. Christ, J.
The plaintiff is the owner of a tract of land situated at Merrick, town of Hempstead, Nassau County, New York, comprising an area of approximately 12% acres *947 and being of a peculiar shape. The tract has a frontage along the south side of Merrick Boad of approximately 430 feet. Plaintiff’s property runs southerly from Merrick Boad at approximately its Merrick Boad width for a distance of about 600 feet and then tapers down to widths varying from about 150 to 300 feet in its remaining depth of approximately 1,200 feet. This parcel is adjacent on the east to a tract of land owned by the Town of Hempstead having an area of 167 acres, more or less. The town’s parcel has about 800 feet of frontage on Merrick Boad, extends south from Merrick Boad for approximately a mile and has a width which varies from 1,400 to 1,800 feet. The two parcels are separated by the vestiges of what was a small water course known as Mud Creek. Pursuant to the provisions of the Building Zone Ordinance of the Town of Hempstead (hereafter called the “ zoning ordinance ”) both parcels are zoned as a B residence district except for the frontage on Merrick Boad which is in a business district (X). Originally, the business zone extended 100 feet south of Merrick Boad but since the widening of that highway it has been cut down, in the case of plaintiff’s tract, to a depth of from 55 to 77 feet. To the east of these parcels there is an extensive residential section, part of which has been in existence for some time and a part now being developed with moderate priced homes. To the north and across Merrick Boad is a business zone area fronting on Merrick Boad but behind this, again, is a small home residential development. To the west and bordering the town’s property is the Meadowbrook Causeway of the Long Island State Park Commission and to the south of the properties is undeveloped salt water marsh and meadowland.
In 1949 the Town of Hempstead established an incinerator district known as the Town of Hempstead refuse disposal district. This district was established pursuant to article 8 of the Nassau County Civil Divisions Act as added by chapter 171 of the Laws of 1949, effective March 17, 1949. Thereafter, the town board acquired the land earlier described and caused to be erected thereon a modern incinerator with a capacity in excess of 600 tons per day. No change in the zoning of the town’s parcel was made prior to the erection of the incinerator so as to remove the land from a B residence district in which the erection of an incinerator is prohibited and to place it in an industrial district (T) where such a use is permissible. However, prior to the acquisition of its land and the erection of the incinerator, the town did cause article 14 of the zoning ordinance to be amended by adding a new section which is as follows: “ Sec. Gr — 11.1 Municipal or Public Use; Notwithstanding any *948 other provisions of this Ordinance, buildings, structures, and premises necessary for use and occupancy by the Town or the County of Nassau for public or municipal purposes are hereby permitted in any use district.”
This action is brought primarily for the purpose of freeing the plaintiff’s property from the restraints and restrictions imposed by virtue of its being in a B residence district under the provisions of the zoning ordinance. It is claimed that since the erection of the incinerator by the town, plaintiff’s property is no longer usable for the erection of residences of the type permitted in a B residence district. The complaint also asks that the operation of the incinerator be enjoined upon the ground that it is a nuisance to plaintiff’s property and that its erection, maintenance and operation is illegal since it is located in a B residence district where incinerators are prohibited and that the exception created by the amendment for facilities of the town and county is a nullity.
It appears from the papers submitted that the plaintiff would not press for the injunction against operation of the incinerator if his property could be devoted to a use no more restricted than that permitted in a light manufacturing district (LM). He has, in fact, contracted to sell this property to one Elihu Berman for a sum substantially greater than the property would be worth for residential purposes. The condition of the sale, however, is that plaintiff’s property may be used legally for purposes permitted in a light manufacturing district (LM).
There was testimony adduced by the plaintiff to show the emission of smoke and light ash from and the rendition of disturbing noises by the incinerator plant. A resident across Merrick Road complained of the noise and smoke. Real estate experts produced by plaintiff testified that the proximity of plaintiff’s property to the incinerator building made it unusable and unsalable for residences and, indeed, some testimony was given that it would be practically impossible to finance any housing development.
In opposition to this, the town introduced expert opinion that the plaintiff’s property was suitable for building developments and for residential purposes. This testimony of a builder and of a real estate expert was bolstered by proof with respect to other incinerators operated within the territorial limits of the town of Hempstead. These were the incinerators maintained and operated by the Incorporated Villages of Valley Stream and Hempstead. This proof was submitted for the purpose of .showing that in close proximity to each of these incinerator *949 plants new residences had been recently erected and sold. In addition to the testimony in respect of the suitability of the land for residences, there was specific testimony concerning the emission of smoke, noise and odor from the incinerator operated by the Town of Hempstead. In fact, two of the attorneys for the plaintiff took the witness stand and testified that on the occasion of two visits to the incinerator plant they had noticed smoke coming from the stacks, had detected an acrid odor and that their automobiles showed evidence of a fly ash deposit which had fallen on them while on defendant’s property at the incinerator.
Photographs introduced in evidence do not disclose any but a very light smoke coming from the stacks of the incinerator. However, they do show that westward from this plant and across Meadowbrook State Parisway there are an incinerator and an open dump operated by the Incorporated Village of Freeport. Some of the photographs introduced in evidence showed a heavy black smoke arising from the Freeport dump and some smoke emanating from the chimney of the Freeport incinerator plant.
It is a familiar principle applicable to cases in which the validity of a zoning ordinance is attacked that the plaintiff must overcome the presumption of validity which attaches to the ordinance (Matter of Wulfsohn v. Burden, 241 N. Y. 288, 296; Osborne v. Village of East Hampton, 61 N. Y. S. 2d 142, affd. 271 App. Div. 837). It is not enough to show that the property could be more profitably or more beneficially used in a less restricted zoning district; it must be shown that the restrictions imposed upon the property prevent its use for any purpose to which it is reasonably adapted (Dowsey v. Village of Kensington, 257 N. Y. 221; Arverne Bay Constr. Co. v. Thatcher, 278 N. Y. 222; Ulmer Park Realty Co. v. City of New York, 270 App. Div. 1044).
Upon all the facts adduced at the trial, the court finds that the property of the plaintiff, although it may have been made less desirable by the advent of the incinerator on the neighboring property, has not been so affected as to make it unusable for residential purposes.
The town board in exercising- its legislative power, must consider the over-all effect on the area zoned since zoning finds its justification in what is good for the community as a whole. Adjacent areas to the subject property must also be considered in assessing the zoning program. The residential area immediately to the east of plaintiff’s property will be in some measure affected if plaintiff’s property is to be rezoned. It follows that *950 plaintiff’s proof falls short of the standard required to invalidate the zoning ordinance. The ordinance as it affects plaintiff’s property is not unconstitutional.
We come now to the question of the right of the town to erect its incinerator in an area zoned as a B residence district. Plaintiff relies heavily upon O’Brien v. Town of Greenburgh (239 App. Div. 555, affd. without opinion 266 N. Y. 582) and decided on February 26, 1935. This case held that an injunction would lie against the erection of a proposed incinerator in the town of G-reenburgh, Westchester County, when the town sought to erect it in a residential “ A ” district where under the terms of the ordinance incinerators were prohibited. The court held there that the proposed incinerator was to be erected not in the exercise of a governmental function but in the exercise of a proprietary function of the town indicating that had it been a governmental function the town would have had a right to place the incinerator in the district, even though it did not conform to the zoning ordinance. Justice Cabswbll in a concurring opinion states in part (p. 560): “The activity of the municipal corporation here challenged is in its proprietary capacity. As such, it is subject to the same restraints as is any corporation or natural person; hence the zoning regulations in their present unamended form preclude the proposed construction by the defendants within the residence ‘ A ’ district.” (Emphasis supplied.)
There was no exception in the Town of Greenburgh’s ordinance such as is contained in section G-ll.l of the Town of Hempstead’s ordinance. Here, was an expressed permission given to the Town of Hempstead or the County of Nassau to go forward with their own facilities when used for public or municipal purposes irrespective of the use district in which they are to be erected. It cannot be challenged that the present incinerator is for a municipal purpose and this exception in the ordinance legalizes it. Had such an exception been made in the Town of Greenburgh’s zoning ordinance, it seems from the reading of Justice Cabswell’s opinion that at least he and two other Justices would have taken a different view. It should be noted further that the present ease which involves the constitutionality of a zoning ordinance as affecting a particular tract or parcel of land must stand upon its own base (Hudson v. Town of Oyster Bay, 248 App. Div. 737) and although in the Town of Qreenburgh case the incinerator there was held to be a proprietary function of the town, under different circumstances the erection by the town of an incinerator may well be considered a governmental function. There are varying tests which have *951 been applied but in the Town of Greenburgh case stress was laid upon the difference of a mandatory duty and a permissive one. In the case before us, although the statute under which the district is formed is permissive in its terms, yet the conditions which exist in a closely-knit, fast-growing township such as the Town of Hempstead, have made it imperative that the town provide for the disposal of refuse and garbage. It is a matter of public health that offal and garbage be disposed of scientifically and efficiently. Burial of refuse and open dump disposal is no longer permissible and the capital to be supplied for the erection of a large incinerator has become a public responsibility. It is perhaps true that in some places the public disposal of. waste is optional but in the town of Hempstead with its present population and closely developed territory, it is no longer an optional matter. In such a circumstance, the incineration of garbage is not a proprietary but rather a governmental function. Without it the community in its present form cannot continue to exist without risk to the general health of its inhabitants.
Under the circumstances as developed by the proof in this case, the court finds that the erection of the incinerator by the Town of Hempstead in a B residence district was permissible as being within the purview of the terms of the zoning ordinance as amended by section Gr-11.1. To the extent that the zoning ordinance restricts the major portion of plaintiff’s property to such uses as are permitted in a B residence district, the court finds that the zoning ordinance is not confiscatory but constitional and valid. Although there was no proof to show the unusability of that portion of plaintiff’s property now lying in a business district (X) the court deems it proper to observe that consideration might have to be given to deepening the business zoning of plaintiff’s property at least to the extent of restoring a depth of 100 feet as it existed prior to the widening of Merrick Road. This observation by the court, however, is not to be construed as a finding by it that the present business zoning of plaintiff’s property is invalid. Attention has been directed to this matter simply in the belief that a condition exists which may require some corrective measures in favor of the plaintiff.
Finally, the court feels constrained to point out that in a case of this sort it must be mindful of the respective equities involved. In this regard it is significant that a municipality has proceeded step by step in procuring an amendment to the law, creating a new district, acquiring land as a site for the erection of an incinerator and thereafter proceeding with the sale of *952 bonds and the erection of an incinerator at a cost of $2,500,000, all of which was well publicized within the geographical area interested in and to be served by such project. When the whole project has been consummated over a period of three years and has been followed by operation of the project for a substantial period of time, it may well be questioned whether an effort to enjoin such operation does not come too late.
This constitutes the decision of the court pursuant to section 440 of the Civil Practice Act.
Judgment for the defendants, without costs.
Proceed on notice.