Frank S. McCullough, J.
This is an application for a temporary injunction restraining and enjoining the Village of Mamaroneck, its officers, agents, servants and employees from interfering with the construction of the dual sludge force main from the Village of Mamaroneck to the City of New Rochelle and the expansion of the sewage disposal plant for the *812 Mamaroneck Valley Sanitary Sewer District in the Village of Mamaroneck.
On or about August 28, 1952 the Interstate Sanitation Commission issued an order directing the County of Westchester to take necessary steps to abate and control pollution in the Hudson River and Long Island Sound areas into which sewage effluent was being discharged.
Between the years 1952 and 1959, the Department of Public Works of the County of Westchester was engaged in major sewer projects in the City of Yonkers and the City of New Rochelle. Because of the limited engineering staff of the Department of Public Works of the county and because of the enormity of these projects, the Mamaroneck Valley sewer project was delayed until the completion of the other sewer projects. The Interstate Sanitation Commission advised the county by letter dated July 14, 1960, that it would permit no further delays on the Mamaroneck project and that construction must commence not later than August 1,1961.
In order to reconstruct the Mamaroneck sanitary sewer plant in the Village of Mamaroneck it was necessary to comply with section 1230 of the Public Health Law which requires that the county obtain the approval of the State Commissioner of Health of the plans for such reconstruction prior to the commencement of the work.
The proposition for the financing of the reconstruction project was approved by the Board of Supervisors of the County of Westchester by resolution adopted the 7th day of May, 1962, and the project was approved by the electorate of the county in the November, 1962 election by authorization of a bond issue of $4,520,000 to finance the project.
On November 9, 1962, an application for a permit, together with detailed plans and specifications, was submitted, through the Health Department of the County of Westchester, to the Commissioner of Health of the State of New York for his • approval.
Thereafter the Village of Mamaroneck requested a formal hearing relative to the issuance of the permit. The Commissioner of Health granted a hearing which was held before the hearing officer designated by the Commissioner, over a three-day period in January, 1963. As a result, findings of fact, conclusions and recommendations were made to the Commissioner of Health which resulted in an order being issued by the Commissioner, dated April 19, 1963, approving the county’s plans for the enlargement of the sewage treatment plant at the Harbor Island site in the Village of Mamaroneck.
*813 The Village of Mamaroneck filed an appeal from the order of the Commissioner of Health dated April 19, 1963, with the Water Resources Commission. That appeal was argued on September 11, 1963. A decision was rendered by the said board on November 14, 1963 affirming the order of the Commissioner of Health. However, no formal written opinion reciting the affirmance of the Commissioner of Health’s order was available until January 23,1964. A certified copy of the decision has now been submitted to the court by the County Attorney. The decision states that the order of the Commissioner of Health is “ confirmed in all respects ”.
Subsequent to the approval by the State Commissioner of Health, the Department of Health, Education and Welfare, Public Health Service, of the United States Government, on June 27,1963, approved the plans and specifications and authorized the taking of bids for the construction. The construction work, pursuant to the general contract, was commenced by the prime contractor, Vanguard Construction Corp. on August 26, 1963.
Apparently a conference was held between representatives of the Village of Mamaroneck and the County of Westchester wherein the discussion included references to building permits for the construction and reconstruction of the sewage plant at the Harbor Island site in the Village of Mamaroneck. The County of Westchester has taken the position that a sewage treatment plant being constructed for the benefit of the Sanitary Sewer District is subject neither to zoning ordinances nor building codes of local subordinate municipalities. Thus no application has been made by the County of Westchester to the Village of Mamaroneck for either a zoning variance or a building permit.
As a result of the county’s refusal to obtain approval from the village, the Board of Trustees of the Village of Mamaroneck by resolution adopted August 22, 1963, authorized the Village Attorney to forward a notice of intention to sue the county and its general contractor for $100 for each day’s violation of its building ordinance for failure to obtain a building permit. Thereafter two independent civil actions were commenced against the general contractor for the recovery of $500 and $600 respectively.
Subsequently the County of Westchester commenced an action for a permanent injunction against the village to prevent the village from interfering and hindering the county and its contractors on the subject project.
The defendant village alleges the right to enforce its building ordinance (Local Laws, 1952, No. 2 of Village of Mamaroneck). *814 claiming that the county must obtain a building permit for the reconstruction of the Mamaroneck Valley Sanitary Sewage District treatment plant at Harbor Island.
A somewhat similar situation arose in Village of Larchmont v. Town of Mamaroneck (239 N. Y. 551), where the village successfully enjoined the defendant town from enforcing its zoning ordinance against the construction of the water works building on property owned by the village, but situated outside of its territorial limits and within the town. There, the town had threatened to arrest village employees working on the construction of the building on the water works property.
In support of its position, the County of Westchester cites the rule that if one municipality is engaged in an activity determined to be governmental, rather than proprietary, then that municipality is exempt from complying with the zoning ordinance of the other municipality. (Nehrbas v. Incorporated Vil. of Lloyd Harbor, 2 N Y 2d 190.) There, the court stated (pp. 193-194):
‘ ‘ In the very nature of things, a municipality must have the power to select the site of buildings or other structures for the performance of its governmental duties. Accordingly, it necessarily follows, a village is not subject to zoning restrictions in the performance of its governmental, as distinguished from its corporate or proprietary, activities. (See, e.g., Village of Larchmont v. Town of Mamaroneck, 239 N. Y. 551, modfg. 208 App. Div. 812; Stiger v. Village of Hewlett Bay Park, 283 App. Div. 827; Sunny Slope Water Co. v. City of Pasadena, 1 Cal. 2d 87, 98; City of Cincinnati v. Wegehoft, 119 Ohio St. 136, 137; 2 Metzenbaum on Law of Zoning [2d ed., 1955], p. 1280; cf. Hewlett v. Town of Hempstead, 3 Misc 2d 945, affd. 1 A D 2d 954, motion for leave to appeal denied 1 N Y 2d 643, 644.) In the Village of Larchmont case (supra, 239 N. Y. 551), for instance, the village had its water supply system in the residential district of the neighboring Town of Mamaroneck and sought to construct a small building near its pump works. Although the town ordinance explicitly prohibited such use in a residential area, the town was enjoined from enforcing it against the village in view of the fact that the building in question was designed for a governmental use. * * *
“ Whether a particular activity involves a governmental function or one proprietary is a matter not always easy of determination. Past decisions, mostly in the field of tort liability (see, e.g., Brush v. Commissioner, 300 U. S. 352, 362; 18 McQuillin on Municipal Corporations [3d ed., 1950], p. 185 et seq.), prove of little value, and no all-embracing formula or definition is *815 possible. Certain functions, such as the maintenance of public schools, of a fire department and of a courthouse, are clearly governmental. And within the same category is the village’s furnishing of a police force (see Matter of Evans v. Berry, 262 N. Y. 61, 68; see, also, 18 McQuillin, op. cit., p. 290), as well as its maintaining and repairing of its roads and highways. (See People v. Grant, 306 N. Y. 258, 260 ; Stiger v. Village of Hewlett Bay Park, supra, 283 App. Div. 827, 828; Markey v. County of Queens, 154 N. Y. 675, 682-683.) Nor may the disposition of refuse and rubbish be placed in a different classification and treated as nongovernmental. Under present conditions, the continued well-being and health of the community and its inhabitants, as well indeed of those in nearby sections, demand that garbage be removed. The necessity creates the duty, and it is incumbent upon the municipality to assure its collection and disposal. "Whatever the view may have been years ago (see, e.g., Oeters v. City of New York, 270 N. Y. 364; O’Brien v. Town of Greenburgh, 239 App. Div. 555, affd. on other grounds 266 N. Y. 582), such an activity must today be stamped a governmental function. (See, e.g., Hewlett v. Town of Hempstead, supra, 3 Misc 2d 945, affd. 1 A D 2d 954, motion for leave to appeal denied 1 N Y 2d 643, 644; Rector, Christ Church v. Town of Eastchester, 197 Misc. 943, 947; Ward Co. v. Street Comrs. of City of Boston, 217 Mass. 381, 384; Kunz v. Titusville, 373 Pa. 528, 532-533; 18 McQuillin, op. cit., p. 267.) And, by the same token, the village may use the barn to store and maintain the trucks and other vehicles employed in performing these functions, and to provide quarters for the workers engaged upon them, despite the fact that the structure is located in a district zoned for residence.”
Recently Mr. Justice Dillon in Oswald v. Westchester County Park Comm. (234 N. Y. S. 2d 465, 467-468, affd. 18 A D 2d 1139) stated:
“ It seems likely that the nature of the activity itself, rather than the character of the legislation which authorizes the activity, is the determining factor. And it also seems likely that an activity is to be regarded as governmental if it has an importa/nt relationship to the continued well-being, health and welfare of the community. (Emphasis supplied.)
“ This whole subject becomes nebulous when it gets beyond activities which are obviously governmental, such as schools, courts, police and fire departments. It may be that the distinction is disappearing from the law and that we are approaching the time when all lawful municipal functions will be regarded as governmental except perhaps in the area of tort liability. *816 In Incorporated Village of Lloyd Harbor v. Town of Huntington, 4 N Y 2d 182, 173 N. Y. S. 2d 553, 149 N. E. 2d 851, it was held that the defendant town had a right to establish a public bathing beach in a village regardless of the fact that the village ordinance prevented any except residential uses. The decision was based on the ground that a zoning ordinance purporting to exclude public parks and bathing beaches is in that respect unlawful. The Court expressly declined to consider whether the maintenance of a public bathing beach was or was not a governmental activity. But the case seems to be significant as indicating the trend of judicial thinking in situations where the need for public recreational areas comes into collision with local laws.
“ That the County of Westchester has been given ample power by the Legislature to create the intended use seems plain to the court, although the plaintiffs have argued to the contrary.”
The court deems the reconstruction of the sanitary sewer treatment plant to be a governmental function which should not be fettered or hamstrung by local zoning ordinances. With respect to the application of the local building ordinance, the court notes that jurisdiction over sanitary sewage and sanitary sewage disposal plants within the County of Westchester is conferred upon the Commissioner of Public Works pursuant to title C of article 9 of the Westchester County Administrative Code (L. 1948, ch. 852, as amd.). Said article (§ 165) provides that: ‘1 Before proceeding with the construction, plans and specifications therefor shall be submitted to the state department of health for approval and a permit obtained from the state department of health pursuant to the provisions of the public health law applicable thereto.”
Section 1230 of the Public Health Law, in turn, covers the subject of permits to be issued by the State Commissioner of Health for such construction.
It would seem logical that if permits or consents from local municipalities were considered necessary, the statutes would have so provided. The absence of such provision would appear to express by omission the attitude that the local municipalities should not be permitted to interfere with the compliance by the county with the mandate of the Interstate Sanitation Commission and the requirements of the State Department of Health pertaining to sewage disposal.
The court, therefore, finds that the zoning ordinances and building regulations of the municipality do not apply to the County of Westchester in this particular performance of its governmental functions for the benefit of the inhabitants of the county.
Accordingly, the plaintiff’s motion is granted.